11L 555
2pi 610

11L 555
117 319

## JOHN W. HANKS *et al. v,* G. W. FOLSOM *et al.*

1. SALE OF LAND. *Conveyance.* An instrument in the usual form of a deed, by which one person purports, for a recited consideration, to have "bargained and sold" to another a specified tract of land, "to have and to hold" to the latter as "an inheritance in fee simple forever," will convey the land to the grantee in fee.

2. SAME. *Assurance of title. Married woman.* A deed of conveyance of land in fee executed by a married woman alone, without any privy examination, is an assurance of title purporting to convey an estate in fee which will perfect the title of an adverse holder of land under the Code, sec. 2763.

3. SAME. *Husband and wife. Limitations.* The disseizin occasioned by the possession of the grantee of such a deed would be a disseizin of the joint estate of husband and wife, and their joint right of action would be barred in seven years, and the title of the husband not only barred but extinguished, and the heirs of the wife, if she died before the husband, would have only three years after her death and the extinguishment of the husband's right within which to bring suit for the recovery of the land.

4. SAME. *Same. Estoppel. Quere,* whether the married woman would be estopped to recover the land by representing herself as unmarried, or her children by accepting the consideration paid, and not offering to return it.

---

FROM HAMBLEN.

---

Appeal from the Chancery Court at Morristown. H. C. SMITH, Ch.

SHIELDS & SHIELDS for complainants.

J. P. EVANS for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed February 19, 1880, by the children and sons-in-law of J. A. Cassidy, who is still living, and Martha A. M. Cassidy, his late wife, to recover the possession of certain land. The chancellor, upon final hearing, declared the complainants entitled to the land upon the death of their father. The Referees have reported in favor of reversing the chancellor's decree, and dismissing the bill with costs. Both sides have filed exceptions to the report, so as to open the whole case.

J. A. and Martha A. M. Cassidy intermarried in 1858, and had five children, four of whom are com-

plainants, and one of them a defendant to the bill. They lived in Grainger, now Hamblen county. He left his wife and family in 1865, and went to Ohio. He wrote two or three letters to his wife shortly after his departure, and then ceased to write altogether. The wife thereupon addressed a letter to the firm by whom she understood from him he had been employed, and in due course of mail received a reply, purporting to be from the firm, that a dead body had been found in the Ohio river, which was supposed to be that of her husband from certain papers taken from a pocket of the clothing. These papers, consisting of her husband's discharge from the army, seem to have been sent to her. This was early in 1866, and from that time she, and her family and neighbors, believed that he was dead. She was thereafter treated as a widow, and he was not again heard of in the neighborhood until about the middle of the year 1876. She and her children by Cassidy were left in abject poverty. At her instance, her only son by a former marriage, came from a distant county and took charge of her and her children.

About the time the land in controversy, which Martha A. M. Cassidy had inherited from her father in 1858, was set apart to her. It consisted of twenty-five acres of unenclosed and unimproved land. In order to secure a home for her family, she exchanged this land for another small tract in the neighborhood which was improved. In pursuance of the agreement of exchange, on July 16, 1869, she undertook to convey the land in controversy to the defendant, F. W. Tay-

lor, and Taylor caused to be conveyed to her the other tract of land. She took possession of the latter tract, and lived on it with her children until her death on November 7, 1870. In the year 1872, her son by her first husband filed a petition in court against the other children for a sale of the land for partition, and such proceedings were had that in January, 1873, the land was sold, and the title vested in the son by the first marriage, who afterwards sold the land to the defendant, Crouch, and at his request conveyed it to Crouch's wife.

Upon the conveyance to him of the land in controversy, F. W. Taylor placed his son-in-law, the defendant, G. W. Folsom, in possession, who fully enclosed it by the first of December of that year, and remained in possession until November 29, 1876, when he sold to the defendant, McFarland, executing to him a bond for title. McFarland at once entered into possession, and has continued in possession ever since.

On January 29, 1880, J. A. Cassidy filed his bill against Crouch and wife to recover possession as tenant by the curtesy, of the land received by his late wife in exchange for the land in controversy. On January 20, 1880, Cassidy in writing surrendered his estate by curtesy in the land in controversy to his children, and on February 19, 1880, the present bill was filed.

The defendants having relied upon the defense of the statute of limitations of seven years, the complainants contend that the instrument in writing by which Martha A. M. Cassidy undertook to convey the land in

controversy to F. M. Taylor, did not accomplish that object for want of necessary words of conveyance, and is in any event a mere nullity, because there was no privy examination of the grantor to its execution.

The material parts of the instrument are as follows: "This indenture, made and entered into the 16th day of July, 1869, between Martha Ann Matilda Cassidy of the one part, and Franklin W. Taylor of the second part, witnesseth, that I, the said Martha Ann Matilda Cassidy, have this day, for and in consideration of the sum of $700, bargained and sold to the said Franklin W. Taylor, a certain piece or parcel of land (describing it), to have and to hold the said tract or parcel of land to the said F. M. Taylor as an inheritance in fee simple forever.

The objection to this instrument is that it contains no words of conveyance, and that the defect is not helped by the *habendum* clause, which, it is said, can only be looked to in order to define, qualify or control the estate conveyed. The operative words in the premises of this instrument are "bargained and sold." More than half a century ago, Chancellor Kent, in lectures which have done honor to our country, did not hesitate to say that a deed would be perfectly competent to convey land in any part of the United States, in which one person undertook, for a recited consideration, to "bargain and sell" to another a lot of land, describing it. And the highest court of at least one of our sister States seems to have judicially held such to be a deed good: 2 Dana (Ky.), 23. In this State, for over thirty years, it has been provided by

statute that every grant by deed of real estate shall pass all of the estate of the grantor "unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument": Code, sec. 2006. And the Legislature, by the Code, sec. 2013, has reduced the forms of conveyance to their simplest elements, and disclosed a clear intent that the largest meaning shall be given to words in grant, unless limited by the instrument itself: *Daly* v. *Willis*, 5 Lea, 104. And our decisions have been, in effect, that the whole instrument will be looked to, without much reference to technical rules, to ascertain the intent of the parties. The same words may be construed as an agreement to convey, or as operating an actual conveyance according to the intention of the parties to be gathered from the context: *Beecher* v. *Hicks*, 7 Lea, 211; *Carnes* v. *Apperson*, 2 Sneed, 562; *Topp* v. *White*, 12 Heis., 165, 173; *Alderson* v. *Clears*, 7 Heis., 667; *Lafferty* v. *Whitesides*, 1 Swan, 123. It is impossible to read the instrument under consideration without seeing that it was intended as a deed of conveyance of the land in fee, and the word "sell" in the present, or "sold" in the past tense, equally import an executed contract unless limited by the context or character of the instrument. We are clearly of opinion that the words used in the instrument under consideration were sufficient, in view of the plain intent of the parties, to convey the land to the grantee in fee.

This court has uniformly ruled since the act of 1819, and has repeated the ruling at this term, that

the meaning of the statute of limitations in favor of
the tenant in possession does not depend upon the
validity of the assurance of title under which he
claims.　If it be in form · an assurance of title pur-
porting to convey an estate in fee, although void both
at law and in equity, the statute will perfect the
title within the period of limitations.　Continuous ad-
verse possession is the important point, the assurance
of title being necessary to ascertain the land, and to
determine the estate acquired: *Hunter* v. *O' Neal,* 4
Baxt., 494; *Thurston* v. *University,* 4 Lea, 513.　The
point is made that the deed of a married woman is
not rendered effectual by signing and delivery, but
only by her privy examination.　And, therefore, says
the learned counsel, the question we make is not that
the deed was void and inoperative merely, but that it
was no deed at all.　The distinction is a nice one,
and perhaps we may be reasonably excused if we fail
to see it.　But the very point now relied on was
made over a quarter of a century ago in a case in-
volving the construction of the act of the Legislature
passed to cure defective probates after a registration
of twenty years, and found one judge of this court
who thought it well taken.　A majority of the court
held, however, that there was no distinction between
the deed of a *feme covert* and any other deed with a
defective probate, although it was conceded the title
did not pass for the want of a proper privy exami-
nation: *Matthewson* v. *Spencer,* 3 Sneed, 513.　This
decision has been repeatedly followed: *Murdock* v.
*Leeth,* 10 Heis., 166; *Anderson* v. *Bewley,* 11. Heis.,

36—VOL. 11.

29; *Stephenson* v. *Walker*, 8 Baxt., 289. For a much stronger reason the ruling should be applied in a class of cases strictly analogous, where time is supplemented by continuous adverse possession for the required period.

The disseizin occasioned by the possession taken under the deed of Martha A. M. Cassidy was of the joint estate of Cassidy and wife, and their joint right of action was barred by the continuous adverse possession of Taylor for seven years, and the title thus acquired was sold to McFarland: *Guin* v. *Anderson*, 8 Hum., 298. And the heir of the wife has only three years after her death, or at any rate after the right of the surviving husband is barred. *Id*. The right and title of the husband was not only barred, but extinguished, and interposed no obstacle to a suit by his children: *McClung* v. *Sneed*, 3 Head, 219. His subsequent conveyance or surrender to his children passed nothing to them. And their right of action as heirs of their mother was also barred and extinguished by a failure to sue in the prescribed time.

It is probable also that the conclusion of the Referee may be sustained upon the doctrine of estoppel, as assumed by them, if not upon the implied fraud of the married woman in representing herself as *discovert*, at any rate, upon the ground that the complainants, although infants and *feme covert*, have ratified the act of the mother by accepting the property given in exchange, and not offering to return the property given in their bill: *Stormer* v. *Ditwaller*, MS. opinion at Knoxville, September term, 1878. It

would be manifestly inequitable to give them both
tracts of land, and it is not easy to see how they
can do equity after having sold, even through proceed-
ings in court, the tract received by them. It is,
however, unnecessary to further consider this point.

The chancellor's decree will be reversed, and the
bill dismissed with costs.