# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| BOBBY R. RUSHING,<br><br>        Plaintiff/Appellee,<br><br>VS.<br><br>ROBERT R. DANIEL,<br><br>        Defendant/Appellant,<br><br>and<br><br>DONALD E. DILLS, SHARON DILLS,<br>and DAVID W. LANIER,<br><br>        Defendants/Appellees. | **Dyer Chancery No. 92-696**<br><br>**Appeal No. 02A01-9711-CH-00278**<br><br>**FILED**<br><br>**December 31, 1998**<br><br>**Cecil Crowson, Jr.**<br>**Appellate Court Clerk** |

APPEAL FROM THE CHANCERY COURT OF DYER COUNTY
AT DYERSBURG, TENNESSEE
THE HONORABLE R. LEE MOORE, CHANCELLOR

**LANCE E. WEBB**
Union City, Tennessee
Attorney for Appellant

**CHARLES T. DYER**
**WILKES & DYER ATTORNEYS**
Dyersburg, Tennessee
Attorney for Appellee Bobby R. Rushing

**STEPHEN D. SCOFIELD**
Dyersburg, Tennessee
Attorney for Appellees Donald E. Dills and Sharon Dills

**AFFIRMED**

                                           **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J.**

**HOLLY KIRBY LILLARD, J.**

        Defendant Robert R. Daniel ("Daniel" or "Appellant") appeals the judgment of the

trial court which quieted the title of Plaintiff Bobby Rushing ("Rushing" or "Appellee") to the disputed property and declared the instrument relied on by Daniel a nullity and of no effect and dismissed all remaining cross claims by the Defendants.

## I. Factual and Procedural History

From approximately 1968 until 1972, Appellant Daniel and Appellee Don Dills ("Dills") had business dealings together. One business they ran together was Volunteer Amusement Company, which they operated together from 1969 until 1971 when Daniel acquired the interest of Dills. In approximately 1969, Dills offered to transfer a one-third interest in the subject property (upon which the Sinclair service station, now called "K.C.'s One Stop" was being built), contingent upon Daniel fulfilling certain requirements. This case revolves around the question of whether Daniel acquired a one-third interest in the property by way of this agreement.

As part of their agreement, Daniel helped in clearing the subject property during the construction of the service station on that property. He also was to be certified in the repair of automotive air conditioning, engine tune-ups and dealer training, all of which he completed in 1969. He was also to operate the service station for a period of years after its completion. Daniel testified the required period was two years. Dills testified that Daniel was required to operate the business for 15 years. The amount of time Daniel actually operated the business is disputed, but he did not operate the business longer than two years. Daniel furnished all the necessary equipment for operating the station, but removed the same when he stopped operating the station. While the service station was in operation, all profits were applied toward the indebtedness, Daniel received a salary for his operation of the service station and the taxes, insurance, and other bills were paid out of the proceeds of the business.

Don Dills and his wife, Sharon Dills, by Warranty Deeds recorded October 8, 1973, June 29, 1977, and January 29, 1985, conveyed full interest in the subject property to

2

David Lanier ("Lanier"). The third deed was superfluous, since Lanier had obtained the entire interest in the subject property by way of the prior deeds. After 1976, Dills no longer had an interest in the subject property.

In September of 1983, Jimmy Dale Daniel, son of Appellant Daniel, was operating a business on the subject property known as "The Store." Jimmy Daniel entered into a lease agreement with David Lanier and paid to Lanier the sum of $900.00 per month. Daniel knew that his son had entered into the lease and paid rent to Lanier.

In 1985 Plaintiff/Appellee Rushing purchased all the assets of "The Store" from Jimmy Daniel for approximately $16,000.00 and began operating a convenience store known as K.C.'s One Stop on the subject property. Jimmy Daniel assigned the lease of the property to Rushing. Lanier, as lessor, consented to the assignment.

Subsequently, on September 17, 1987, Rushing entered into a purchase agreement with Lanier to purchase the subject property. Rushing discovered the Daniel deed in a title search and Lanier sought to obtain a quitclaim deed from Daniel with regard to his one-third interest in the subject property, but Daniel refused. Rushing decided to go forward with the purchase and on April 3, 1992, Lanier executed a Warranty Deed purporting to convey undivided title in the subject property to Rushing. On November 20, 1992, Rushing instituted this action against Daniel to quiet title to the subject property. The Dills and Lanier were later added to the suit as defendants, and Daniel filed cross-claims against them.

At trial, the chancellor made the following findings. The instrument recorded was a photocopy, it was undated, and did not rise to the standard of a deed. The document was not prepared to indicate that Dills signature is acknowledged and the document contains a contingency for Daniel to perform in the future which was not met. The document fails for lack of consideration and is not enforceable as a contract or deed. This appeal by Daniel followed.

3

## II. Construction of the Instrument

It is the duty of the court to construe a deed, if possible, to give effect to its several parts and avoid rejecting any of its provisions, the presumption being that the parties intended every part of the deed to have some meaning. Quarles v. Arthur, 231 S.W.2d 589, 590 (Tenn. App. 1950). It cannot be assumed that the grantor intended to contradict himself and the court should always lean to such a construction as reconciles the different parts of the deed and reject a construction which leads to a contradiction. Id. In construction of deeds, the overriding purpose is ascertainment of the intention of parties, which will be gathered from the instrument considered as a whole without regard to formal divisions or parts. Id.

In the case before this Court, the instrument at issue reads in its entirety:

> To all concerned:
>
> I, Don Dills, owner of said property located at Highway 51 By Pass called Volunteer Sinclair Service Station consisting of building, equipment, and land 150' x 150', do sell one third (1/3) interest to Bob Daniel for the sum of one dollar ($1.00) and other considerations.
>
> Final Agreement will be drawn up at a later date. All profits of said service station will be applied toward any indebtedness.

Appellant argues that the language of this instrument clearly conveys a one-third interest in the subject property, and that the subsequent paragraph does not defeat that interest. Appellant cites Higgenson v. Smith, 272 S.W.2d 348 (1954) for the contention that where the conflict between the granting clause and a later limiting clause cannot be reconciled, the granting clause must prevail.

While this is a true statement of the law, this Court must first look to the whole of the instrument, without reference to its formal divisions, in order to ascertain the intention of the parties, and not allow technical rules to override the intent. Beecher v. Hicks, 7 Lea, 211(1881). An estate conveyed by the granting clause may be enlarged or lessened in the habendum if, considering the instrument as a whole, such appears to have been the intent

4

of the parties. Higgenson at 349.

In the case of Carnes v. Apperson, 2 Sneed, 562 the grantor executed an instrument which arguably deeded property to the grantee. The grantee argued that the words "bargained and sold" evidenced a title *in presenti* was intended to pass. The court found that while such language was sufficient to presently convey an interest, subsequent language in the instrument evidenced it was merely an agreement to pay upon a the occurrence of a contingency (payment of $500).

This Court must determine whether the parties intended to presently convey an interest in the property, or whether this instrument was something different. The same words may be construed as an agreement to convey, or as operating as an actual conveyance, according to the intention of the parties to be gathered from the context. Hanks v. Folsom, 79 Tenn. 555 (1883).

This case bears some similarity to the case of Topp v. White, 12 Heiskell, 165, 173. In the Topp case, the parties executed two writings. The first writing stated "Said Davis has this day, by these presents, sold to Robertson Topp the tract of land (describing it). [H]e has likewise executed five notes . . . [I]t is understood by the parties to this agreement, as there is not time to pass regularly deeds for the above mentioned property, that between this and the 1st of May, 1869, the parties are to meet in Memphis, where said Davis is to make, or cause to be made, to said Topp, a deed in fee for said land . . ." The second writing stated as follows: "I have this day bargained and sold to Isaac N. Davis the following town lots in the city of Memphis (describing them), I obligate myself to make said Davis a deed in fee for said lots."

The court in Topp set out to determine whether the writings operated, *in presenti,* to pass title, or whether they were mere agreements to convey. In evaluating the first writing, the court found that the language in the beginning of the agreement "Said Davis has this day, and by these presents, sold to Robertson Topp," standing alone, would be sufficient to convey the title. Id. at 174. However, the language found further in the same

writing evidenced that they did not intend the title to pass by the contract then executed. Id. The court stated that if the parties understood that by this writing the title to the land passed, and that the contract was, in this regard, an executed one, there could have been no reason for stipulating for the execution of another deed for the same purpose. Id. The court found the same as to the second writing. When Topp expressly covenanted that he would make a deed thereto, he implied that what he did make was not regarded as a deed. Id. at 175.

In the case at hand, the language "Final Agreement will be drawn up at a later date" evidences the intention of the grantor that this writing was not a final agreement. There were also other problems with the instrument. Dills indicated that he had no recollection of ever executing the document and doesn't think that he prepared it. Neither Dills nor Daniel recall the delivery of the deed to Daniel. The instrument recorded was admittedly a copy and no explanation was given for the absence of the orignal. The document was prepared on Volunteer Motor Lodge stationary. There is nothing on the document to show actually when the document is dated. The document does not contain a proper acknowledgment, and there is no way to determine if the notary was actually notarizing Dill's signature. Furthermore, the instrument did not contain an oath of consideration as required under Tenn. Code Ann. §67-4-409(6)(A) nor was any Recordation tax paid as required by Tenn. Code Ann. §67-4-409(a). Considering the instrument as a whole, with emphasis on the actual language indicating a final agreement would be drawn up later, this Court finds that this instrument was not a deed.

Furthermore, every species of contract may be subject to conditions by which an estate or interest may commence or be enlarged or defeated. Carnes v. Apperson, 2 Sneed, 562. No technical words are necessary to create the condition, or declare its nature. Whether the contract be upon condition precedent or subsequent must be resolved by the intention and understanding of the parties, to be collected by carefully considering the entire instrument. Id.

6

All parties in this case agreed that the transfer of the interest in the property was conditioned upon several things. Both Appellant and Appellee Dills agreed that Appellant was to supply the tools and equipment for the service station and operate the station for a period of time. The trial court found that the contingency was not fulfilled. Upon careful consideration of the record in this matter, we find that the evidence does not preponderate against the trial court's finding.

Dills testified that Daniel agreed to furnish the tools and equipment and operate the service station until the indebtedness was paid. The testimony of Daniel was similar except he indicated that he was only required to operate the service station for a two year period. Dillls testified that when Daniel left he actually took the equipment with him. There was no rebuttal testimony in that regard. There was proof from Dills that Daniel operated the station for only a brief period of time and that between 1969 or 1970 and 1972 there were four or five other people who operated the service station. There was testimony from one witness that corroborated that testimony. While several key facts in this case were disputed, the trial judge was able to assess the credibility of all witnesses, and the evidence presented does not preponderate against his finding.

The language in the instrument stating that a "Final agreement will be drawn up at a later date" may equally suggest that this was not a contract. However, any type of contract (including a deed) is subject to conditions. Based upon the instrument itself and the testimony of the parties, the trial court found that this instrument contained a contingency for Daniel to perform in the future. The trial court also found that the fulfillment of the contingency was the consideration for the contract or deed. After hearing all the testimony in this matter the trial court concluded that the contingency was not fulfilled. For the above noted reasons, this Court has found that the evidence does not preponderate against that finding. Therefore, whether the instrument be a deed, a contract to convey, a contract to negotiate, or something less, it contained a contingency that was not fulfilled, and therefore must fail for lack of consideration.

7

For the foregoing reasons, the trial court did not err in finding that this instrument was not a deed, that the instrument contained a contingency for Daniel to perform in the future which was not met and the instrument was not enforceable as a contract or a deed. The trial court was correct in quieting the title of Bobby Rushing.

### III. Dismissal of Cross Claims

It is the position of Appellant that the trial court erred in dismissing his cross-claims against David Lanier, for improvements to the property and for one-third share of the rents from the subject property. Based upon the above finding that Appellant did not acquire any interest in the property by way of the instrument, Appellant is not entitled to any share of the rents from the subject property.

Appellant claims to have expended the sum of $7,000 for improvements to the property, in the form of an addition of a game room to the back of the service station. Further testimony indicated the cost to Appellant may have been closer to $4,500. There was testimony that in 1978 Appellant and Mahlon Green, operator of the service station at that time, added a trailer to the back of the station and remodeled it to serve as a game room for Appellant to place his gaming machines. Green paid for the trailer and Appellant paid for the remodeling materials and did the labor.

It appears from the record that the sole purpose of the addition was to provide an area for Appellant to put his video games. Appellant testified that he customarily splits the profits from his video games 50/50 with the business operator of the premises, and he did this with Green. Although Appellant testified that it was not customary for him to improve the property in order to place his machines, the improvement of the property directly benefitted Appellant. This Court finds that Appellant benefitted from the addition to the property, and is not entitled to reimbursement from Lanier for the improvement to the property on any theory such as unjust enrichment or quantum meruit. The trial court did not err in dismissing all the cross claims of the parties.

## IV. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

                                                 _____
                                                      HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.